UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 09 CV 2838 |
| v. ) | (05 CR 1007) |
| ) | |
| ARIEL MEDLOCK ) | Judge John W. Darrah |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Petitioner Ariel Medlock's ("Medlock") *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. Section 2255.

### BACKGROUND

On August 3, 2006, Medlock was charged with one count of conspiring with others to possess with intent to distribute and to distribute over 5 kilograms of cocaine, in violation of 21 U.S.C. § 846. Medlock, who is thirty-four years old and completed two years of college, pleaded guilty to the charge on October 10, 2007, as part of a plea agreement with the government. The parties agreed that the amount of cocaine involved in the conspiracy was between 50 and 150 kilograms, yielding a base offense level of 36. Medlock's criminal history category is II; therefore, the suggested guideline range for sentencing was 151-188 months. The government recommended to the Court a sentence be imposed within the guideline range.

On June 24, 2008, Medlock was sentenced to 151 months of imprisonment. The Court advised Defendant of his appellate rights; however, a notice of appeal was not subsequently filed.

1

Medlock has now filed the instant *habeas* petition, asserting four grounds: (1) his counsel was ineffective for failure to file a requested direct appeal; (2) the government breached the plea agreement; (3) counsel was ineffective for advising Defendant to plead guilty and that the plea agreement was not knowingly and voluntarily entered; and (4) counsel was ineffective for advising him to accept the plea agreement and waiver-of-appeal proviso and fixed guideline range.

In his reply ("Traverse to the Government's Response"), Medlock persists in his claim that counsel failed to file a requested direct appeal and also essentially claims that his plea was not voluntarily and knowingly entered because it was induced by government promises of a lesser sentence than was imposed. Medlock then argues that he should have received a lesser sentence based on the advisory nature of the guidelines, citing, *inter alia*, *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Kimbrough*, 552 U.S. 85 (2007); *United States v. Gall*, 552 U.S. 38 (2007); and section 3553 sentencing factors, 18 U.S.C. § 3553 (a)(2).

## LEGAL STANDARD

Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. Collateral relief pursuant to 28 U.S.C. Section 2255 is only available where there was "an error of law that is jurisdictional, constitutional, or constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1992)).

2

The district court must review the record and draw all reasonable inferences in favor of the government. *See Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). Because Medlock filed his petition *pro se*, his petition is entitled to a liberal reading. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim is procedurally defaulted if it could have been raised and is not raised on appeal. *See Ballinger v. United States*, 379 F.3d 427, 429 (7th Cir. 2004). However, failing to appeal does not waive a claim under Section 2255 for ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500 (2003). The two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), is used to review claims of ineffective assistance of counsel. Applying this test, the defendant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant. *See Strickland*, 466 U.S. at 688.

## ANALYSIS

*Counsel Was Ineffective for Failure to File a Requested Direct Appeal*

In his motion, Medlock alleges that his counsel was ineffective for failure to file a requested appeal. Under the first prong of the *Stickland* test, the defendant must demonstrate that the representation that he received was not objectively reasonable, considering all of the circumstances. *Id.* Counsel's conduct is strongly presumed to satisfy professional standards. *See Id.* at 688-89. It must first be determined if counsel "consulted with defendant" regarding the appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). "Consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If after the consultation with Medlock, counsel failed to follow specific instructions from Medlock regarding an appeal, he acted in a professionally unreasonable manner. *See Id.* If counsel failed to file an appeal, Medlock is not

3

required to prove actual prejudice. *See Castellanos v. United States*, 26 F.3d 717, 719-720 (7th Cir.1994).

Therefore, if Medlock's counsel was instructed to file an appeal and refused, then counsel would be determined to be ineffective in that regard, and Medlock should be allowed to file an appeal of his sentence. An evidentiary hearing is required to resolve this claim by Medlock.

*Breached Plea Agreement*

In claim two, Medlock claims that the government promised him a sentence of eight to ten years and then breached this agreement. This is contrary to the written plea agreement. The plea agreement states "defendant understands the offense to which he will plead guilty in the indictment carries a maximum penalty of life imprisonment, a mandatory minimum penalty of ten years imprisonment."

In the plea agreement, Medlock acknowledged that "no threats, promises, or representations have been made, no agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty." Also in the plea agreement, the government promises that "[a]t the time of sentencing, the government will recommend that the Court impose a sentence within the applicable advisory guideline range. Defendant is free to argue for the mandatory minimum penalty of ten years imprisonment." During the change of plea hearing, the following colloquy occurred:

> THE COURT: Now, I understand there was a plea agreement in effect. I have that document in front of me. The first page is entitled Plea Agreement. On the last page appears a line; under the line appears the typewritten words, Ariel Medlock; above the line is a signature. Is that your signature?
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: Mr. Medlock, did you read this before you signed it?
>
> THE DEFENDANT: Yes, I did.

4

THE COURT: Did you discuss this with Mr. Rueckert, your attorney, before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Did he answer all your questions regarding the terms and conditions of the agreement before you signed it?

THE DEFENDANT: Yes, he did.

THE COURT: Do you have any questions at all about the nature of this plea agreement?

THE DEFENDANT: No, I do not.

THE COURT: Anything at all you don't understand about it or you're a little bit fuzzy about?

THE DEFENDANT: No, I have spoken with my attorney and he explained it thoroughly.

* * *

THE COURT: Do you understand, Mr. Medlock, that under the statute that controls the offense set out in the indictment you intend to plead guilty to, you could be sentenced to a period of imprisonment for the rest of your life. You would be required to serve at least a ten-year mandatory minimum period in prison, you could be fined up to $4 million, and upon release from prison you would be placed on a period of supervision for at least five years and possibly up to the rest of your life. Do you understand that?

THE DEFENDANT: Yes, I do.

* * *

MR. RUECKERT: And based on that, his guideline range would be 36. He was going to get three points off of that for this plea and his acceptance of responsibility, which would leave him at level 33.

THE COURT: And there's been a preliminary determination, Mr. Medlock, that your criminal history category is a Category 2. Do you understand that?

THE DEFENDANT: Yes, I do.

5

> THE COURT: That being the case, the preliminary guideline range – or the suggested sentence under the Federal Sentencing Guidelines would be 151 to 188 months. Do you understand that as well?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Yes?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that at the time of sentencing it would be my obligation to determine in fact the total offense level based on information that's presented at the sentencing hearing and information that's contained in the presentence investigation report, and also to determine the criminal history category. Do you understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Do you understand that you will be bound by my determination as to the guidelines range, as to the total offense level as well as the criminal history category, and you will not be permitted to withdraw your plea of guilty if you disagree with my computation of the guidelines?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Do you have any questions at all about the nature of the offense set out in Count 1 of the indictment?
>
> THE DEFENDANT: No, I have no questions, sir.

Not only is there nothing in the record that supports Medlock's claim that the government made any promises to Medlock regarding a specific sentence or that he did not understand the possible sentence he faced, but the record conclusively rebuts these claims.

*Counsel was Ineffective for Advising Defendant to Plead Guilty*

In his petition, Medlock claims that his attorney was ineffective for advising him to plead guilty to the charges. However, this is contrary to statements he made during the plea colloquy. The following colloquy occurred during the change of plea hearing:

> THE COURT: Are you satisfied with the advice that [your attorney has] given you and the effort that he's rendered on your behalf?

6

THE DEFENDANT: Yes, I am.

The claim that Medlock is dissatisfied with his attorney's advice is not supported by the record. Further, counsel is not to be judged based on hindsight. *Almonacid v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002).

*Plea Agreement Was Not Voluntarily or Knowingly Entered*

Medlock asserts that he did not voluntarily or knowingly enter into the plea agreement. In his petition, he states that his counsel "did not inform him that in order to sustain [the government's] burden of proof . . . the government would need to prove beyond a reasonable doubt that Medlock engaged in such illegal activity." However, he acknowledged that he understood this concept during his plea colloquy:

> THE COURT: If there were a trial, you would be presumed to be innocent of the charges against you, and that presumption that you are innocent would remain with you through every stage of the proceedings and could only be overcome by competent evidence produced by the government that showed that you were guilty beyond a reasonable doubt.
> In short, you are not required to prove your innocence. The government bears the burden of proving you guilty and bears the burden of proving you guilty beyond a reasonable doubt. Do you understand that?
>
> THE DEFENDANT: Yes, I do.

He also acknowledged that he had no difficulty understanding the proceedings. During the plea colloquy, the following exchange occurred:

> THE COURT: Do you have a grasp of what we're doing here and do you understand everything that's happening here?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Have you used any alcohol or drugs within the last 24 hours?
>
> THE DEFENDANT: No, I have not.

7

> THE COURT: And I ask you again, have you had any difficulty at all in understanding what we've discussed here so far?
>
> THE DEFENDANT: No, I have no difficulties.

Therefore, Medlock's claim that he did not voluntarily or knowingly enter into the plea agreement is not supported by anything in the record.

*Counsel Was Ineffective for Advising Defendant to Accept the Plea Agreements*

The final claim in Medlock's petition is regarding his acceptance of the "waiver-of-appeal proviso and fixed guideline range." However, this is contrary to his acknowledgement of the waiver during the plea colloquy. During the plea colloquy, the following statements were made:

> THE COURT: If there were a trial and you were found guilty, you would have the right to appeal to a higher court if you believe that there were errors that were committed at the time of trial. [. . . ] By pleading guilty you're waiving those rights as well. Do you understand that?
>
> THE DEFENDANT: Yes, I do.

Medlock also claims that his attorney "never went over the plea with the defendant and never argued for a lesser sentence." However, during the sentencing hearing, Mr. Rueckert asked this Court "to consider sentencing Mr. Medlock to the mandatory minimum in this case. Ten years is still a lot of time. He did try to make an effort to aid the government. He has pled guilty, and has accepted responsibility." The record reflects that Medlock's attorney did argue for a lesser sentence than the recommended 151 months' imprisonment.

8

## CONCLUSION

For all the reasons stated above, Petitioner is entitled to a limited evidentiary hearing regarding the issue of ineffective assistance counsel for failure to file a requested appeal. All other counts of the Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. Section 2255 are denied.

Date: October 29, 2009

JOHN W. DARRAH
United States District Court Judge